IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 06-060 |
| BRIAN TRAY | ) |
| | ) |

## MEMORANDUM ORDER

Before the court is counsel's petition for attorneys' fees. We appointed counsel for defendant in the above-captioned matter pursuant to the Criminal Justice Act (CJA), 18 U.S.C.A. § 3006A [doc. no. 25]. The CJA provides compensation for appointed counsel at the conclusion of counsel's representation for time expended in court and "reasonably expended" out of court. See 18 U.S.C.A. § 3006A(d)(1). Pursuant to the CJA, authority and discretion to determine the appropriate compensation for counsel lies with the District Court. See 18 U.S.C.A. § 3006A(d)(5).

The amount that appointed counsel may receive, however, is limited. Indeed, Congress expressly limited compensation for appointed counsel in CJA cases involving felony charges to $7,000.00. See 18 U.S.C.A. § 3006A(d)(2). In this case, counsel has submitted a claim for services and expenses in the amount of $23,098.60, more than triple the $7,000.00 authorized by Congress.

The CJA provides that payment in excess of the $7,000.00 maximum may only be made for "extended or complex representation."

18 U.S.C.A. § 3006A(d)(3).[1] An award of attorneys' fees exceeding the maximum authorized by Congress is the exception, not the rule.

"Extended representation" is representation that "involves more time than what is required in the usual case." U.S. v. Holtz, 379 F.Supp.2d 988, 991 (C.D. Ill. 2005) (citing U.S. v. Bailey, 581 F.2d 984, 989 (D.C. Cir. 1978)). We do not find that extended representation occurred here.

Counsel represented defendant in this case from August 2006 until November 2008. The length of time from when counsel became involved until resolution, however, was in some measure due to the fact that counsel sought and obtained seven extensions of time, each one of thirty days or longer, to file pretrial motions. Ultimately, no substantive pretrial motions were filed on

---

[1] Counsel should provide a sufficiently detailed explanation to support a claim that the representation is "extended" or "complex" and that excess payment is necessary to provide fair compensation. U.S. v. Bailey, 581 F.2d 984, 990 (D.C. Cir. 1978). Counsel here provided the following explanations to support his claim.

> Case preparation was made more complicated by the fact that this related to two separate investigations handled by two separate US attorneys, which culminated in a superseding indictment 18 months after counsel's first involvement. This also involved complex analysis of loss figure calculation from various separate as well as interrelated real estate transactions. Although the government attorney's "loss" figures at time exceeded $2 million, counsel succeeded in securing a sentence based on loss of $205,000.

[Counsel's Claim for Services and Fees]. Additionally, counsel stated the following regarding time spent on the case, "[c]lient had mental health and drug abuse issues which necessitated frequent interaction with counsel that exceeded the norm." Id.

defendant's behalf. Additionally, the parties were aware, early in the case, that a superseding indictment would issue at some point; thus, there was no urgency in bringing the case to conclusion.

Nor was this a complex case. A case is complex under the CJA where the "legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case." <u>Guidelines for the Administration of the Criminal Justice Act and Related Statutes</u>, Vol. 7, Guide to Judiciary Policies and Procedures, Sec. A, Ch. 2, Part C § 2.22B(3). Some courts look to additional factors such as voluminous evidence and complex defenses that require a greater than average amount of time or skill in preparing the defense. <u>See</u> <u>U.S. v. Mukhtaar</u>, No. 06 Cr. 31, 2008 WL 2151798, *4 (S.D.N.Y. May 21, 2008).

Applying the aforementioned factors, we do not find that this case was in any way complex. Defendant perpetrated mortgage fraud while employed as, essentially, a retail residential mortgage broker. Defendant submitted false documents, relating to his clients' resources and ability to pay the mortgages, to lenders. The original indictment, filed on February 7, 2006, charged defendant with a single count of conspiracy to commit mail and wire fraud. The original indictment related to the single purchase of a multi-unit residence located in Pittsburgh, Pennsylvania in November of 2004 [doc. no. 1]. The indictment alleged that in

November of 2004, defendant submitted fraudulent documents to obtain the mortgage loan for the property on behalf of an individual identified as "BC".

On January 30, 2008, the government issued a superseding indictment [doc. no. 83]. The superseding indictment charged three counts in addition to the conspiracy charge set forth in the original indictment (Count I). The four counts in the superseding indictment are based on four fraudulent loans involving a total of five discrete criminal acts.

One of the additional counts in the superseding indictment alleged that on November 30, 2004 defendant committed wire fraud (Count IV), when he wired $71,528.65 to New York, New York to complete the November 2004 loan for "BC" as set out in the original indictment.

The second new charge in the superseding indictment alleged that defendant committed wire fraud on August 25, 2004 when he wired $53,058.85 to New York, New York to complete a fraudulent loan on behalf of an individual identified as "RC" (Count III).

The final new charge in the superseding indictment alleged that defendant committed bank fraud (Count II). The superseding indictment alleged that over the course of a 14 month period, defendant and other unidentified persons created false documents to support false statements made in mortgage loan applications. Although the text of the superseding indictment

4

indicated that "numerous" fraudulent loans occurred, only two loans totaling $152,000.00 were identified.

The presentence report provided that the government's evidence linked defendant to four fraudulent loans, worth a total of $205,038.98. The $205,038.98 figure was the amount used to determine the offense level for calculating defendant's sentencing guideline range.

Neither the superseding indictment, the docket entries, nor the presentence report reveal any unusual or complex legal or factual issues in this case. Nearly all of the motions that were filed in this case, in addition to the aforementioned requests for extensions of time, were non-substantive motions to modify conditions of release and motions to travel. The facts and circumstances of this case did not even warrant defendant filing the following routine pleadings: a motion challenging the validity of the grand jury; a motion to dismiss the indictment; a motion to suppress evidence; proposed jury instructions; or proposed voir dire. No substantive objections were filed to the presentence report. The only substantive motion filed on defendant's behalf was a basic, uncontested motion in limine seeking the government's Rule 404(b) and Rule 609 evidence [doc. no. 57]. Furthermore, defendant pleaded guilty generally to the indictment without a plea agreement made known to the court. Therefore, we do not find that this case was anything more than a run-of-the-mill fraud case.

This case is a typical heartland case, neither unusually extensive nor complex. We are, nonetheless, mindful of the number of hours counsel asserts he spent on this case. Counsel's hours, however, are not the point of reference for assessing whether we should waive the congressionally mandated maximum allowance of $7,000.00 for a CJA's claim for services. See Holtz, 379 F.Supp.2d at 991. Rather, the focal point is the nature of the case itself and whether the facts and legal issues render the case either extended or unusually complex. Neither was evident here.

We do not question counsel's integrity, nor do we suggest that he did not adequately and professionally represent his client's interests. Moreover, the court recognizes that CJA panel attorneys perform a valuable public service. The CJA, however, has a maximum fee limit determined by Congress and the court and counsel alike are bound by it. Attorneys who accept CJA appointments must recognize this limit.

In light of the foregoing analysis, we are obliged to apply the CJA statutory maximum in this case. Accordingly, IT IS HEREBY ORDERED that the total amount approved for CJA payment on

counsel's claim for services and expenses in this case is $7,000.00.

BY THE COURT:

*signature*

Gary L. Lancaster
United States District Judge

cc: All Counsel of record

1/12/09